Helen Olsen, Administratrix of the Estate of Richard Olsen, Deceased, Plaintiff-Appellee, v. George Pigott and John Kenyon, Individually and as Co-partners, Defendants-Appellants.

Gen. No. 11,632.

Second District, Second Division.

February 19, 1963.

Sears, Streit, Tyler and Dreyer, of Aurora (Robert C. Jenkens and Marvin D. Dunn, of counsel), for appellants.

Matthews, Jordan, Dean & Suhler, of Aurora (Everett Jordan and John L. Petersen, of counsel), for appellee.

SPIVEY, J.

A jury in the Circuit Court of DeKalb County returned a verdict in the amount of $15,000 for the plaintiff, Helen Olsen, Administratrix of the estate of Richard Olsen, deceased, in a suit for the wrongful death of Richard Olsen. Defendants George Pigott and John Kenyon appealed from the judgment on the verdict and the order of the Court denying their post trial motion.

The decedent was killed on December 1, 1959, when he was decapitated by a corn chopper he was operating while in the employ of the defendants. At that time, the defendants were partners in a farming operation. Richard Olsen was driving a tractor which pulled a corn chopper and a farm wagon in that order. The chopper was powered by a power takeoff and line of shafting extending from the rear of the tractor to the front of the chopper. The arrangement of the equipment was such that the drive shaft from the tractor connected to the center of the rear of the tractor immediately beneath the area where the seat would ordinarily be. This shaft was attached to the spline of the power takeoff. At either end of the shaft were universal joints, or knuckles, which allowed the shaft to operate while the equipment moved over any terrain. At the place where the shaft connected to the spline of the tractor, there was a metal housing fashioned in an inverted "U" shape, bolted in such

193

a way as to form a cover over a part of the power takeoff and universal joint. At the time of the accident, however, most of the joint at the tractor was exposed and unprotected.

The shaft also was unprotected. In normal operation of the chopper, the shaft turned at a speed of 525 revolutions per minute. The shaft was a square steel shaft approximately three to four feet in length. When sold, the drive shaft was equipped with a cylindrical cover or housing with bell-shaped ends. The cylinder, or tube, enclosed the shaft and the bell-shaped ends covered the knuckles or joints. This housing "floated" on the shaft by means of bearings and protected persons operating the equipment from the danger of being entangled in the joints or upon the revolving shaft. On the day of the occurrence, the housing on the shaft had been removed. The seat to the tractor had also been removed and on the date of the occurrence and in order to operate the equipment, the decedent was obliged to stand on a small metal platform, and straddle the universal joint and shaft.

It is conceded that the field in which the decedent was working on the day of his death was muddy. Shortly after noon, the tractor, chopper and wagon were found by Ed Troutman, supervisory employee of the defendants, to be running wild in a corn field and the headless body of the decedent was found nearby.

An examination of the chopper disclosed that pieces of bone and hair were on the blades. Neither decedent's body nor clothing showed any other evidence of injury or disarrangement.

At the time of his death, the decedent was twenty-four years of age. He left surviving, his widow, Barbara, aged twenty-five, and two children, aged five and two. The evidence showed that he was a very industrious young man, who was working two jobs.

194

The decedent was raised on a farm but his experience had not included the operation of a corn chopper. He had worked for the defendants for five days, but the record is not clear as to how much if any of that time was spent by the decedent in the operation of the chopper. There was testimony that when the decedent worked around farm machinery, he was careful.

Six years prior to this occurrence, the deceased had been involved in a motorcycle accident and received a depressed skull fracture. As a result of the injury, he developed "Jacksonian seizures" approximately nine months after the injury. He was treated by medication for at least two years and at the time of his death, Olsen's treating physician stated that Olsen had recovered and no longer experienced seizures. However, this testimony was disputed by evidence offered by the defendants to show that the deceased had seizures within a few months of his death.

Defendants, to maintain their appeal, contend that the plaintiff failed to prove that the defendants were negligent. They also contend that the deceased assumed the risk of any dangers incident to his employment. Further, defendants contend that the plaintiff failed to prove that any negligence of the defendants was a proximate cause of the decedent's death. The defendants also contend that the court erred in giving certain instructions offered by the plaintiff, and admitted erroneous evidence.

There were no eye witnesses to the occurrence and at the time of the trial, Ed Troutman, the defendants' supervisor, was physically unable to give testimony.

In support of defendants' contention that the plaintiff failed to prove that the defendants were negligent, the defendants say that there was no evidence to show that the defendants removed the seat from the tractor or the guard over the knuckles and drive

shaft. It is true that there is no showing as to who removed the seat from the tractor and the guard from the drive shaft or when the same were removed. The defendants did not testify on this point.

One of the acts of negligence charged was that the defendants failed to furnish the deceased with reasonably safe and proper machinery with which to work. The evidence was to the effect that the guard on the drive shaft and the seat on the tractor were standard equipment. Certainly the machinery was not safe with these devices removed but defendants say that the plaintiff himself may have removed this equipment. Thus different inferences may arise from the evidence of the condition of the machinery.

■ Defendants would require that circumstantial evidence, in the absence of direct evidence to establish a fact, not only creates an inference as to the fact sought to be shown, but also excludes all other inferences. This has never been required. Courts have held that the name of a mercantile establishment on the side of a truck leads to the presumption that the truck was owned, operated and managed by such establishment. Bosco v. Boston Store of Chicago, 229 Ill App 564. Yet it is obvious that a name on the side of a truck does not exclude the possibility that the truck was not owned, operated and managed by the person or organization named on the side of the truck.

Similarly, proof of ownership of a vehicle has been held to be proof of a circumstance to show prima facie that the owner was the operator of the vehicle at the time of a collision. Again, this may be rebutted, but it is a sufficient showing, absent other evidence. Howard v. Amerson, 236 Ill App 587.

In Jacobs v. Illinois Nat. Bank and Trust Co., 345 Ill App 30, 102 NE2d 182, one issue was whether Yardley was driving the car involved in a crash. This court said, "A greater or less probability, leading on

196

the whole to a satisfactory conclusion, is all that is required to establish controverted facts by circumstantial evidence. (Ohio Bldg. Safety Vault Co. v. Industrial Board, 277 Ill 96, 102, 103, 115 NE 149; Lindroth v. Walgreen Co., 407 Ill 121, 135, 94 NE2d 847.) The Lindroth case quotes from Lavender v. Kurn, 327 US 645, 90 L Ed 916, 66 S Ct 740, as follows, viz: 'Whenever facts are in dispute or the evidence is such that fair minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.' "

"Where the questions of negligence or due care cannot be proved by direct evidence they must be proven by evidence entirely or largely circumstantial in nature." Thomas v. Smith, 11 Ill App2d 310, 137 NE2d 117.

■ An examination of the evidence discloses several circumstances, the inferences from which are sufficient to show prima facie that the defendants were negligent. They are: the equipment was owned by the defendants, the defendants' supervisory employee was present at the time of death of the decedent; the deceased was subject to the control of defendants' supervisory employee; a guard was removed from the drive shaft; the seat was removed from the tractor. The uncontradicted evidence shows that the decedent was inexperienced in the use of equipment employing a power takeoff. We must consider all of the evidence and the legitimate inferences arising therefrom to determine whether or not there exists an evidentiary basis for the judgment of the trial court.

As opposed to the evidence offered by the plaintiff, there stands only the suggestion by the defendants that it is possible that the decedent himself created

197

this condition. Of course it would be far more satisfactory if there was testimony as to the actual act of removal of these devices. But under the circumstances, the evidence is not available. To insist on the impossible would be to deny recovery in every instance, such as this, where there is no witness to the injury. The proof, with its legitimate inferences, did tend to show that the defendants were negligent.

 Next, defendants contend that the plaintiff assumed the risk of any dangers incident to his employment.

They urge that if the condition of the equipment was dangerous, the decedent had to know of the condition and assumed the risk. Plaintiff contends that the evidence shows that the deceased had not worked around machinery employing a power takeoff and drive shaft, and whether or not the deceased not only knew of the condition but appreciated the risk involved, was a question of fact for the jury.

 Defendants place principal reliance upon the case of Wheeler v. Chicago & W. I. R. Co., 267 Ill 306, 108 NE 330. This case holds that the employee is held to have contracted with reference to the incidental risks and hazards ordinarily connected with the employment. But extraordinary risks which can be obviated by the exercise of reasonable care on the master's part are not assumed unless the risks are comprehended by the employee, or are so obvious that they should be comprehended.

It would appear to us that the risk here was extraordinary and not assumed unless the deceased as a matter of law should have comprehended the danger. The record shows that the deceased worked around farm machinery and was careful. The evidence shows however, that he had no experience with power takeoffs or revolving shafts. Doubtless, this would appear to be dangerous to a person with experience with

198

such equipment but would a reasonable person without experience in working with this equipment perceive the extraordinary danger created by the removal of the seat or the shield, or, for that matter, would the ordinary reasonable person even know that guards are provided for revolving shafts? This seems to us to be a question of fact for the jury. When the court discusses the ordinary reasonable person, certainly the court could not substitute its judgment for a jury of peers. Counsel and the Court are regularly called upon to examine situations fraught with danger and our eyes are trained to see and appreciate these conditions. We cannot say, as a matter of law, that things which might seem obviously or patently dangerous to us would have the same appearance to the ordinary person.

In the case of Fox v. Beall, 314 Ill App 144, 41 NE 2d 126, the employee had knowledge of the defect and requested that the power lift on the plow be repaired. But, there as here, there was no evidence that the employee appreciated the danger to himself. This court there said, "An appreciation of the danger is the factor that establishes responsibility, not mere knowledge of the defect or condition by which the danger is created." . . . "It is said to be a question for the jury whether the danger was appreciated by the servant."

There is an excellent discussion of assumption of risk in the case of Stone v. Guthrie, 14 Ill App2d 137, 144 NE2d 165, cited by both parties. The Court there stated, "The question of assumed risk is usually and normally one for the jury and involves the subsidiary question of whether the servant understood and appreciated the risks which he is alleged to have assumed."

In the absence of any evidence that the deceased was warned of the danger or had experience with this

199

kind of equipment, we hold that the Court did not err in submitting this issue to the jury.

■ It is also contended that the plaintiff failed to prove the proximate cause of the death of the plaintiff's intestate. Defendants argue that there is no evidence that the deceased slipped, became entangled on the shaft or fell into the chopper because of any act or omission on their part. Defendants concede that proximate cause is most generally a question of fact for the jury, but in this case, they say there is no evidence and the determination that their acts or omissions were the proximate cause of the death can only be based upon surmise and conjecture.

It cannot be questioned that the deceased was killed when the chopper passed over his head. Hair and bones on the blades of the chopper constitute uncontroverted evidence that this was the instrument which produced the death. It is clear that the evidence introduced did not exclude all possible causes, and leave, standing alone the conclusion that the death was caused by defendants' failure to guard the shaft and knuckles and equip the tractor with a seat. But such proof is not required. As was said in Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, "The inquiry here is whether the result reached below was one which is reasonable on the facts in evidence, not whether other conclusions might also have been reached." The defendants could reasonably anticipate that the operator might fall from the tractor if no seat were provided.

In the instant case, the evidence showed that the field was muddy and the small metal platform where the deceased was obliged to stand was muddy. The pictures and evidence show that the field was rough and uneven, and that the equipment was being operated through a field where rows of corn had stood. There was no seat on the tractor. A reasonable inference from these circumstances is that the deceased

200

fell or was thrown because of the defendants' failure to provide reasonably safe machinery with which the plaintiff could work. "It is a sufficient compliance with the requisite standards in civil causes if that conclusion is 'more probable' and 'reasonable.'" Hocker v. O'Klock, 16 Ill2d 414, 158 NE2d 7.

In Zahn v. Muscarello, 336 Ill App 188, 83 NE2d 504, one issue on appeal was whether or not intoxication was the proximate cause of a drowning. The court said, "Defendants argue that the jury were obliged to guess or speculate as to these facts because the evidence was purely circumstantial. Courts have always considered it within the province of the jury or any other trier of facts, to make reasonable inferences from established facts, and such permissible inferences will not be discarded by a reviewing court because other inferences might have been drawn from such established facts unless the inferences drawn are unreasonable. Rosenfield v. Industrial Commission, 374 Ill 176, 29 NE2d 102. There is abundant authority for the proposition that in civil cases the cause of death, as well as the time of death, are facts that may be established by circumstantial evidence. Wilkinson v. Aetna Life Ins. Co., 240 Ill 205, 88 NE 550; Goldstein v. Metropolitan Life Ins. Co., 324 Ill App 168, 57 NE2d 645; and Rogers v. Prudential Ins. Co. of America, 270 Ill App 515. In cases involving similar facts courts have held that the weight of evidence is a question for the jury."

Here the facts were established by circumstantial evidence, but sufficient circumstances were shown from which the jury could reasonably find that the defendants' negligence was the proximate cause of death.

█ Plaintiff offered the testimony of Dr. Harold J. Trapp to show that the deceased was fatally injured when the chopper passed over his head and to

establish that he was in good health and an industrious person. The decedent's prior brain injury was shown and on cross examination the defendants explored the latter condition exhaustively. On redirect examination, the plaintiff asked the doctor if he had an opinion based upon his treatment of the injury in 1953 and the nature and extent of the injury and the doctor's knowledge of residual effects from that injury; and from subsequent observation, whether or not the deceased might have had a seizure on December 1, 1959, which seizure resulted from the injury sustained in 1953. The doctor over objection stated that in his opinion, the decedent could not have had a seizure. Defendants objected, claiming that the doctor's answer was on the ultimate issue and invaded the province of the jury. This answer was only permitted after an intensive examination of the witness by the court and counsel for both parties, outside the presence of the jury. It is obvious that the court satisfied himself as to the reliability of facts or data upon which the opinion was founded, and that the opinion was within the scope of the special knowledge possessed by the witness.

In our opinion, this question was not on an ultimate issue nor did it "usurp the function of the jury." Defendants say that the cause of death was a controverted ultimate issue and Dr. Trapp's opinion invaded the province of the jury. Dr. Trapp did not purport to give his opinion as to the means by which the deceased met his death. Olsen was killed by the chopper. The ultimate issues were, was the death proximately caused by the defendants' negligence while the deceased exercised ordinary care and did the deceased assume the risk? Defendants, by their examination, sought to show that the deceased had suffered an epileptic seizure and that it was a preexisting condition which caused the deceased's death.

202

The only basis for the suggestion was the fact that the deceased had had seizures some time before his death. Counsel for the defendants suggest that as many causes might exist for the death of the deceased as the ingenuity of the mind of man can conceive. We believe that testimony intended to eliminate from consideration one suggested cause was not testimony on the ultimate issue. Dr. Trapp did not attempt to say that the defendants were guilty of negligence, nor did he say that any misconduct of the defendants was the proximate cause of the deceased's injuries nor did he attempt to express an opinion on the deceased's due care or that he had not assumed risk of injury by the equipment. For this reason, the question was not subject to the objection made against it. Goddard v. Enzler, 222 Ill 462, 78 NE 805. The answer was in the nature of an opinion as to the condition of health of the deceased prior to the infliction of the mortal wound. Such testimony has even been held to be the proper subject of non-expert testimony. In Chicago City Ry. Co. v. Van Vleck, 143 Ill 480, 32 NE 262, the defendant contended that the plaintiff's injuries complained of had been caused in an accident ten years prior to the matter then under consideration. The court said, "We do not see why persons who were familiarly associated with Appellee and came in frequent contact with her, were not capable of knowing whether she was in good or bad health, whether her hearing was good and acute or otherwise, whether her eyesight was defective or not, whether or not she was lame, and whether she had the free and natural use of her hands or not . . . ."

Here the opinion was by a physician who had had experience in treating patients who suffered from seizures. His testimony was competent to show the deceased's condition of health and was not an opinion on an ultimate issue.

Defendants complain of three instructions given by the court. One objection is so frivolous as not to require discussion.

■ Complaint is made of an issues instruction which follows the format of IPI Number 20.01. Counsel for the defendants specifically waived any objection to the giving of this instruction, and cannot now complain of the giving of the instruction in this court.

■ Lastly, defendants contend that the court erred in giving Instruction Number 17 which provided: "You are instructed that if you find from the evidence that Ed Troutman was the employee of the defendants and was in charge of the work on the farm on the day in question in the absence of the defendants, then in that event he was the agent of the defendants, and any act or omission of the said Ed Troutman, if any, was the act or omission of the defendants."

The evidence clearly showed without contradiction that Troutman was in charge of the operation on the particular farm and that the defendants were not present at the time of the death of Olsen. It was proper for the jury to determine from the evidence, whether or not the defendants, acting by their agent, were negligent. There was no error in giving the instruction.

For these reasons, the judgment of the Circuit Court of DeKalb County is affirmed.

Judgment affirmed.

WRIGHT, P. J. and CROW, J., concur.