**Hughie Adell Clubb, Administratrix of the Estate of Everett Vernon Clubb, Deceased, Plaintiff-Appellant, v. George Main, Defendant-Appellee.**

Gen. No. 65–47.

Fifth District.

December 17, 1965.

Jack Williamson, of Vienna, for appellant.

Robert H. Chase, Chase and Forman, of Metropolis, and Donald R. Mitchell, Mitchell & Green, of Murphysboro, for appellee.

GOLDENHERSH, J.

Plaintiff, as administrator of the estate of Everett Vernon Clubb, filed her complaint in the Circuit Court of Johnson County, alleging that her intestate decedent was employed by defendant on his farm, that while so employed, he fell from the tractor furnished him by de-

fendant, and suffered injuries causing his death. She charges defendant with negligence in that defendant negligently failed to furnish the deceased with reasonably safe and proper machinery, and negligently required him to operate the tractor with a seat which was loose and unstable. Defendant answered, denying the allegations of negligence, and alleging by way of "special defense" that the decedent was aware of the dangers involved and assumed the risks as an ordinary incident to the discharge of his duties. Plaintiff replied, the case was tried to a jury, and a verdict returned in favor of plaintiff in the amount of $21,000. Defendant filed a post-trial motion praying the entry of judgment notwithstanding the verdict, and in the alternative for a new trial. The court allowed the motion for judgment notwithstanding the verdict, entered judgment for defendant, and denied the alternative motion for a new trial. Plaintiff prosecutes this appeal.

There were no eyewitnesses to the occurrence. The testimony shows that on October 11, 1963, the deceased was 62 years of age, in good health, and weighed 226 pounds. He had been employed by defendant for 13 or 14 years as a farmhand, and lived on defendant's farm. He had been married to plaintiff for 29 years and they had one child, Ronald George, 15 years of age.

Plaintiff, administrator, testified that about 9:00 o'clock a. m., the deceased was driving a tractor, working in a field across a blacktop road from his house. Plaintiff testified that the deceased was "going across the ridges and was leaning to the right like the seat was leaning to the right".

Defendant, called under section 60 of the Civil Practice Act, testified that the deceased was employed by him, that he operated machinery and a tractor, that he was a good operator and a man of careful habits. Defendant, on the morning of the occurrence, saw the tractor used by the deceased, "where he wasn't supposed to be, next

464

to the fence." About 30 minutes later, he saw the tractor in the same position. He called Buel Basham, an employee of defendant, they went to the tractor, found no one there, and shortly thereafter found the deceased lying in the field. He had been run over by the disk, attached to the tractor. An ambulance was called, the deceased was taken to the Metropolis hospital, and died a few minutes after his arrival there.

Defendant described the tractor and stated he had bought it new, in 1952 or 1953. He testified that so far as he knew, the deceased had not had any mechanical experience, but like defendant's other employees, did minor repairs on the equipment. Defendant's employee, Buel Basham, was a mechanic, and Tony Miller was in charge of taking care of defendant's machinery. Miller had recently installed the electrical system on the tractor used by deceased. Defendant's machinery was periodically inspected by defendant's employees, but not by any outside mechanics. Defendant himself had considerable knowledge of the machinery. The farm machinery was gone over 2 or 3 times a year. Defendant did not recall the last time he had seen this tractor when the motor was running; he had ridden on it about a month before for a distance of a mile, when it was being towed. At that time the motor was not running, and it was after that experience that a new electrical system was installed. This tractor was the oldest one he owned. Some time in the spring of 1963 Buel Basham and the deceased had repaired the tractor seat and had put in a new spring and bolt. Defendant sold his farm shortly after the occurrence and the tractor was sold, along with his other equipment. No repairs were made to any part of the tractor prior to the sale.

Ronald George Clubb, the deceased's 15-year-old son, testified that he had driven the tractor about a month before his father's death, and at that time the seat leaned to the right.

465

Two photographs of the tractor were offered by plaintiff, and admitted in evidence, showing the back of the tractor. In one photograph (Plaintiff's exhibit A) the seat is shown in an upright, verticle position. The witness who identified the photographs stated that subsequent to the making of plaintiff's exhibit A, the seat was given "a small push of the hand," and another picture was taken (Plaintiff's exhibit B). In the second photograph the seat is tilted a distance, described by the witness, as 6 to 8 inches.

Defendant, on cross-examination by plaintiff's counsel, identified a photograph that showed an exposed spring on the tractor, and stated if the seat were in proper position the spring would not be visible in the picture.

Buel Basham, by deposition, testified that the seat of the tractor was mounted so that it would fold back, that some bolts were loose and "the seat would work a little bit," that he and the deceased put bolts in it and tightened it up. He stated that the seat sits on the spring, that if the spring gets weak the seat will go down to the floor of the tractor, that a bracket keeps the seat from going sideways, that if the seat were in proper working order, it could not be moved to the right. He stated that springs would break sometimes, that he knew the spring had been replaced, but he didn't remember when this was done. He also testified that the deceased was cross-disking at the time, and "this is rougher than going with the rows."

An exhibit prepared by defendant, and admitted without objection, shows that when deceased was found in the field, identifiable tracks of the tractor and disk showed the deceased had been disking from north to south, that upon completing a run extending from the south end of the field to its northern boundary, the tractor turned to the left, or westward, that it traveled in an inverted double S curve to the south a distance of 400 feet, swung to its left for a distance of 150 feet, at which point the

466

deceased was run over by the disk, that it then traveled several hundred feet in a northeasterly direction, coming to rest against the fence which ran along the north edge of the field. When found, the tractor was in gear, the throttle was about half open, and the motor was not running.

It is defendant's contention that there is no evidence of negligence on his part, or to support the inference that the deceased's injuries were proximately caused or contributed to by any act, or failure to act, on the part of the defendant. He further contends that the evidence fails to prove the deceased free from contributory negligence, and the only reasonable inference to be drawn from the evidence presented is that the deceased was guilty of contributory negligence, or had assumed the risk of the employment, as a matter of law.

In his brief, defendant states it is perhaps reasonable to conclude that deceased was run over by the disk, but that the manner in which he came to be run over remains a matter of conjecture. He suggests that it is just as reasonable to conclude that his fall from the tractor was occasioned by physical illness, or that a wasp or bee may have attacked him. He argues that the course of the tractor as demonstrated by defendant's exhibit (supra) is more consistent with these suggested possibilities than is a fall caused by a tilting tractor seat.

A similar contention was considered in Olsen v. Pigott, 39 Ill App2d 191, 188 NE2d 361. In rejecting the argument, the Appellate Court for the Second District, through Mr. Justice Spivey said at page 200, "It is clear that the evidence introduced did not exclude all possible causes, and leave, standing alone the conclusion that the death was caused by defendant's failure to guard the shaft and knuckles and equip the tractor with a seat. But such proof is not required. As was said in Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847, 'The inquiry here is whether the result reached below was one which is rea-

sonable on the facts in evidence, not whether other conclusions might also have been reached.' The defendants could reasonably anticipate that the operator might fall from the tractor if no seat were provided."

In Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74, the Supreme Court at page 84, said "Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. Bailey v. Central Vt. Ry. Co., 319 US 350."

It is not required that the evidence from which the jury drew the inference exclude every inference other that the one drawn by the jury. It is only necessary that the inference be one that could be drawn from the evidence. The verdict may not be set aside because the jury could have drawn different inferences, or because a court may feel that another conclusion is more reasonable. Lindroth v. Walgreen (supra). There is evidence to support the inference drawn by the jury that defendant was negligent, and the negligence was the proximate cause of the deceased's injury and death.

The trial court, in a comprehensive memorandum, found, as a matter of law, the deceased had assumed the risks of the employment. Both parties have cited numerous authorities and have ably argued their respective

468

positions on this issue. We have examined the cases cited and have reached the same conclusion as did the Appellate Court for the Second District when it stated in Hinrichs v. Gummow, 41 Ill App2d 428, at page 434, 190 NE2d 610, "But each case is different on its facts and the only rule that can be derived from an examination of this authority is that each case must be decided on its own facts." Ferguson v. Lounsberry, 58 Ill App2d 456, 207 NE2d 309.

In Wheeler v. Chicago & W. I. R. Co., 267 Ill 306, the Supreme Court at page 319, 108 NE 330, said "The law has long been settled in this State that the servant, when he engages in an employment, does so in view of the risks incident thereto. He will be presumed to have contracted with reference to such risks, and to have assumed the same, if he receives an injury resulting from the incidental risks and hazards ordinarily connected with the employment. (Chicago and Eastern Illinois Railroad Co. v. Heerey, supra.) Extraordinary risks,—that is, risks which may be obviated by the exercise of reasonable care on the master's part,—are not assumed by the servant unless they are, or ought to be, known to and comprehended by him. The servant assumes all the ordinary risks of the service and all the extraordinary risks of which he knows and the dangers of which he appreciates. (3 Labatt on Master and Servant, —2d Ed—secs 1178, 1179, 1186a.) The general rule in this State is, that the servant will be regarded as voluntarily assuming the risks resulting from the use of defective machinery if its defects are as well known to him as to the master. He assumes the risk of known dangers and such as are so obvious that knowledge of their existence is fairly to be presumed. (Chicago Drop Forge and Foundry Co. v. Van Dam, 149 Ill 337; Pittsburg Bridge Co. v. Walker, 170 id. 550.) Not only the defects, but the dangers, must be known to him. (Union Show Case Co. v. Blindauer, 175 Ill 325; Illinois Terminal

Railroad Co. v. Thompson, 210 id. 226.) But where the danger arising from the defect would be obvious to a person of ordinary intelligence the law will charge him with knowledge of the danger. Chicago and Eastern Illinois Railroad Co. v. Heerey, supra."

 Under the Illinois law, while a plaintiff must prove himself free of contributory negligence, the proof of assumption of risk is the defendant's burden. As aptly stated in Restatement of the Law, Torts, 2d Edition, section 496D, the standard to be applied on the issue of assumption of risk is a subjective one, of what the particular plaintiff sees, knows, understands and appreciates. On the other hand, in determining the issue of contributory negligence, the conduct of the plaintiff is measured against the objective standard of what a reasonably careful person would do under the same or similar circumstances.

 The evidence here shows that the tractor seat could be pushed from its proper vertical position a distance of 6 to 8 inches by a simple push of the hand. Buel Basham and the defendant testified that the spring which holds the seat erect had been replaced several months prior to the occurrence, that the spring was new, although some question is raised in the evidence as to whether the bolts used in its installation were new. Applying the subjective test applicable to the defense of assumption of risk to the evidence, we cannot say as a matter of law that the deceased knew that the use of the tractor in that condition was dangerous or that he comprehended the danger of its continued use. As the Supreme Court said in Wheeler (supra) "Not only the defects, but the dangers must be known to him." Applying the rule that where the danger arising from the defect would be obvious to a person of ordinary intelligence, the law will charge him with knowledge of the danger, since the test of assumption of risk is subjective, we cannot substitute our judgment for that of the jury and attribute to the deceased a degree of intelligence

sufficient to say that as a matter of law he knew, or should have comprehended the danger of operating the tractor. Fox v. Beall, 314 Ill App 144, 41 NE2d 126.

 The question of contributory negligence presents little difficulty here. In Jines v. Greyhound Corp., 33 Ill2d 83, at page 85, 210 NE2d 562, the Supreme Court, speaking through Mr. Chief Justice Klingbiel said "Ordinarily contributory negligence is a question of fact to be decided by the jury, but it becomes a question of law when it can be said that all reasonable minds would reach the conclusion that the facts did not establish due care and caution on the part of the plaintiff. (Citing cases) In determining whether plaintiff was contributorily negligent as a matter of law, the testimony favorable to plaintiff must be taken as true. (Citing cases.)"

 Applying the above quoted rule, we cannot say that all reasonable minds would reach the conclusion the deceased was guilty of contributory negligence.

In ruling on the portion of the post-trial motion which is in the nature of a motion for new trial, the trial court, in its memorandum, points out that defendant assigns only one error upon which he bases his prayer. The trial court correctly held that the error complained of is not, of itself, sufficient to warrant the granting of a new trial. For the reasons herein set forth the judgment of the Circuit Court of Johnson County is affirmed as to that part which denies defendant's motion for a new trial, and as to that portion of the judgment which purports to enter judgment in favor of the defendant and against plaintiff, in bar of suit, the judgment is reversed, and the cause remanded to the Circuit Court of Johnson County with directions to enter judgment on the verdict in the amount of $21,000, and costs.

Judgment affirmed in part, reversed in part, and remanded with directions.

EBERSPACHER, P. J. and MORAN, J., concur.