Barbara POCHES and Charles
Poches, Jr., Appellants,

v.

J. J. NEWBERRY COMPANY, a corporation, and Aircap Manufacturers, Incorporated, Appellees.

No. 76–1470.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1977.

Decided Feb. 23, 1977.

Gerald L. Reade, Yankton, S.D., for appellants; and John R. Kabeiseman, Yankton, S.D., on brief.

James E. Doyle, Yankton, S.D., on brief for appellees.

Before MATTHES, Senior Circuit Judge, and BRIGHT and HENLEY, Circuit Judges.

PER CURIAM.

Barbara Poches, a resident of South Dakota, lost an eye as a result of an accident which occurred while she was operating a rotary-blade power mower sold by J. J. Newberry Company and manufactured by Aircap Manufacturers. She and her husband, Charles Poches, Jr., brought an action in the United States District Court seeking damages from Newberry, Aircap, and others. Against Newberry and Aircap, they sought recovery on grounds of negligence and strict liability. The jury answered certain general and special interrogatories adversely to the contentions made by Mr. and Mrs. Poches. The district court entered a judgment of dismissal on the jury verdict. The Poches bring this timely appeal. We affirm.

Federal jurisdiction rests on diversity of citizenship and the requisite amount in controversy. The case is governed by South Dakota law.

Charles Poches purchased the lawnmower from Newberry on May 17, 1969. He and his wife used the lawnmower from the time of its purchase until the date of the injury, August 28, 1973. While Mrs. Poches was mowing the lawn at her residence, the mower picked up a piece of wire lying in the grass and ejected it through the discharge chute. The exact trajectory of the wire after leaving the discharge chute was the subject of much dispute,[1] but, whatever

its path, the piece of wire struck Mrs. Poches in the eye.

The appellants contended, among other things, that the power mower had been defectively designed by reason of the manufacturer's noncompliance with 1968 American Standards Association safety specifications. The safety standards recommended a maximum blade tip speed of 19,000 feet per minute and a maximum vertical angle of 30 degrees in the discharge chute. The evidence indicated that when the mower was constructed in 1969, the angle of discharge was 35 degrees, and, at the time of the accident, the blade tip speed may have exceeded 19,000 feet per minute.

As is the usual situation in cases of this kind, the parties sharply disagreed on crucial facts bearing on liability. Each side presented expert testimony to substantiate differing contentions of how the accident may have occurred.

The case was submitted to the jury on special interrogatories. By its answers to the interrogatories the jury found that the plaintiffs were not entitled to recover on either their theory of negligence or on their theory of strict liability in tort. And the jury specifically found that Mrs. Poches was guilty of contributory negligence that was more than slight, and that she had assumed the risk of injury.

On this appeal, appellants make the following contentions supporting motions for judgment n.o.v. on liability, or, alternatively, for a new trial:

1) The Poches were entitled to a directed verdict of liability on the strict liability theory, or, alternatively, that the appellants' new trial motion should have been granted because the verdict was against the weight of evidence.

2) The trial court erred in instructing on assumption of risk as no evidence supported such an instruction.

---

1. An expert witness called on behalf of Mr. and Mrs. Poches contended the injury resulted when the wire, without ricocheting, moved upward and backward in an arc, boomerang fashion, into the operator zone at the rear of the mower and produced the injury to Mrs. Poches'

eye. The expert witnesses called by the manufacturer and retailer of the mower theorized that the injury occurred when the wire particle ricocheted off the concrete basement wall of the Poches' home.

3) The trial court erred in instructing on misuse as a defense, because of the lack of evidence that the mower had been used in a way other than as intended or reasonably foreseeable by the manufacturer.

4) The trial court erred in denying to plaintiff's counsel the right to exhibit certain transparencies on an overhead projector while arguing to the jury.

5) The trial court committed error in refusing to allow a deposition exhibit, a diagram of an eye, to go to the jury.

6) The trial court erred in its rulings with regard to other evidentiary matters.

7) The trial court erred in refusing a new trial because of juror misconduct and because the appellees allegedly failed to comply with a pretrial order directing the parties to produce all exhibits in advance of trial.

I. *Strict Liability.*

■ We address the claim that Mr. and Mrs. Poches established strict liability as a matter of law. The significant legal question presented by this contention is whether noncompliance with current industry standards establishes a defective and unreasonably dangerous product as a matter of law. Appellants cite no South Dakota case for the affirmative of this proposition. The weight of authority holds that violations of industry standards, while relevant and material on the issues of liability on theories of negligence or strict liability, do not, without more, establish as a matter of law that the product is defective and unreasonably dangerous. *E. g., Wenzell v. MTD Products,* 32 Ill.App.3d 279, 336 N.E.2d 125 (1975); *Charleston National Bank v. International Harvester Co.,* 22 Ill.App.3d 999, 317 N.E.2d 585 (1974); *Price v. Buckingham Mfg. Co.,* 110 N.J.Super. 462, 266 A.2d 140 (1970); *Nordstrom v. White Metal Rolling and Stamping Corp.,* 75 Wash.2d 629, 453 P.2d 619 (1969); and *McComish v. DeSoi,* 42 N.J. 274, 200 A.2d 116 (1964). *But cf. Berkebile v. Brantly Helicopter Corp.,* 219 Pa.Super. 479, 281 A.2d 707 (1971).

■ Accepting appellants' contention that they established some inadequacies in the manufacturer's compliance with current industry standards in the production of the mower in question, the weight of legal authority nevertheless supports the district court's action in submitting the strict liability issue to the jury. Further, the district court committed no error in denying a new trial to appellants on the strict liability issue. The manufacturer, Aircap, had complied with industry standards promulgated in 1964. Also, some evidence indicated that Aircap complied with 1968 standards. In any event, the issue presented was particularly suited for resolution by a jury.

II. *Assumption of Risk and Misuse.*

■ It is argued that the district court erred in submitting the issues of product misuse and assumption of risk to the jury because there was no evidence justifying the submissions. We do not agree. Some evidence indicated that when the accident occurred Barbara Poches was operating the mower with the chute discharging grass clippings directly against the concrete basement wall. She admitted awareness that a power lawnmower could throw out stones and other foreign objects lying in the grass. In addition, the record presents evidence indicating the Mr. and Mrs. Poches may not have adequately policed the yard, although they both knew of the existence of debris remaining in the lawn after carpenters had shingled the house. The evidence disclosed, moreover, that the throttle mechanism which controlled the engine speed had been broken, permitting the mower blade to turn at a speed greater than normal. Mrs. Poches and her husband testified that for several years they had operated this unrepaired throttle mechanism by kicking it or pushing it with a stick. In light of this evidence, the trial court was justified in submitting the product misuse and assumption of risk issues to the jury.

III. *Evidentiary Matters.*

■ We have reviewed the record of the trial and find no prejudicial error in the

trial court's rulings on admission of evidence, its ruling regarding display of exhibits to the jury during closing arguments, or its denial of jury access to exhibits during deliberations.

## IV. Juror Misconduct.

Appellants' claim of juror misconduct rests on an affidavit submitted in support of appellants' motion for new trial. The affiant, a passenger on an airplane, stated that a fellow passenger told the affiant that he "had been sitting as a juror in a case in federal court where a woman was suing for loss of an eye allegedly caused by a lawnmower throwing some metal out, thus striking her in the eye."

The juror identified himself as a retired rancher from the Miller, South Dakota, area who was on his way to a stock show in Denver, Colorado. The juror informed the affiant that he and another male juror had trouble convincing "the other women" on the jury that the women were wrong and the men were right; that the case would never have even been brought but for the fact that the plaintiff's husband was an attorney; that the passenger believed the plaintiffs had definitely proved the lawnmower in question was "substandard and not up to specifications," but he felt many things on the market today were not up to proper standards or specifications.

Appellants identify the aircraft passenger-juror as Laird Swaney, the jury foreman. The appellants contend the affidavit establishes that, contrary to assurances given by Swaney to the court and counsel, Swaney hurried jury deliberations as he wished to depart for the stock show in Denver, Colorado; that the statements indicated prejudice toward lawyers; and that

the jury verdict was a product of mistake or prejudice.

■ Although the issue has not been raised by the parties, the affidavit as to the extrajudicial statements made by juror Swaney may well have been inadmissible under the nonimpeachment rule of Fed.R. Evid. 606(b).[2] In the application of that rule, we recently held in *United States v. Eagle*, 539 F.2d 1166, 1169–71 (8th Cir. 1976), that the verdict of a jury may not be impeached by evidence of the thought processes and undisclosed subjective prejudices of individual jurors who concurred in the verdict. Moreover, Swaney's alleged remarks about his desire to be in Denver were not inconsistent with the disclosure that he made to the judge at trial. When informed of Swaney's desires at trial, the appellants expressly declined to make an objection. The remaining statements contained in the affidavit, assuming its admissibility, do not demonstrate any misconduct. We conclude that no abuse of discretion is shown by the trial court's refusal to grant a new trial based on allegations of juror misconduct, or upon other grounds.

Finding no prejudicial error in the submission of this case to the jury, we affirm.

2. Fed.R.Evid. 606(b) provides:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except

that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *Nor may* his affidavit or *evidence of any statement by him concerning a matter about what he would be precluded from testifying be received for these purposes.* [Emphasis added.]