**Robert Paul Hinrichs, Plaintiff-Appellee, v. Lester Gummow, Defendant-Appellant.**

**Gen. No. 11,722.**

Second District, Second Division.
May 23, 1963.

Maynard and Maynard, of Rockford (James F. Maynard, of counsel), for appellant.

Miller, Thomas, Hickey & Collins, of Rockford, and Blakely, Long, Grutzner & Jaeckle, of Beloit, Wisconsin (Edwin T. Powers, Jr., and J. Richard Long, of counsel), for appellee.

SPIVEY, J.

This suit is what is commonly called a farm liability action. Robert Paul Hinrichs secured a jury verdict in the amount of $12,500 in the Circuit Court of Winnebago County for the personal injuries sustained in a fall on March 28, 1959. The suit was against Lester Gummow, for whom Hinrichs, the Plaintiff, was working, when injured.

For reversal of the judgment in favor of the Plaintiff, the Defendant makes several contentions, each of which can be evaluated by giving consideration to three general propositions. In essence, Defendant contends that the Plaintiff failed to prove any negligence on the part of the Defendant, as charged in the complaint. He also contends that the Plaintiff assumed the risk of injury and that the Plaintiff was guilty of contributory negligence as a matter of law. Lastly, Defendant urges that the trial court erred in refusing to grant a new trial on the ground that the verdict is against the manifest weight of the evidence.

It will be necessary, for a better understanding of the contentions of the Defendant, that we review the

430

facts and state the salient matters shown in the evidence. Certain facts are not in dispute. At the time of the injury, Plaintiff, a man 21 years of age, was employed by the Defendant. He was helping cut down a Dutch Elm tree at the time that he was injured. At the time of the fall, he was standing ten to fourteen feet from the frozen ground and was operating a one-man gasoline powered chain saw. The Plaintiff was standing in the crotch of the tree formed by eight or nine limbs and was sawing off limbs with the chain saw. He was not holding on to the tree but stated that he was required to use both hands in handling the saw which weighed between 35 and 60 pounds.

The defendant instructed the Plaintiff to use a hay rope in the operation. The rope was passed over a limb above the limb to be sawed off and then the end of the rope was tied to the limb which was to be cut. After the rope was tied on, the other end of the rope was attached to the drawbar of a tractor and in this manner, the limb was lowered after it was cut. The Defendant stated that the rope was used to keep the limbs from falling on a picket fence below the tree and also to "save him" (the Plaintiff) from injury by means of being struck by the limb.

The Plaintiff was required to climb in the tree and attach the rope as he was instructed, and the Defendant undertook to handle the rope from the ground. It was conceded by the Plaintiff that at the time of the fall, the rope was taut.

Plaintiff had successfully cut six limbs before he was injured. He completed sawing the seventh limb from the tree and then took his eyes from the limb and turned his attention to the saw, to shut off the engine. As he did this, the butt of the limb that he had sawed, swung against his shoulder and knocked him from the tree. In the fall he sustained serious injuries.

The evidence tends to show that the Plaintiff had never cut limbs in the manner in which he was em-

ployed, prior to the date of the injury. It is sufficiently clear that the method employing the rope, was chosen and directed by the Defendant. Plaintiff concedes that he had used a power saw to cut limbs from a tree on one prior occasion, but claims never to have worked with a rope.

In the complaint, Plaintiff made five charges of negligence. Reduced to their simplest form they may be summarized as charging the Defendant with the following: (1.) Allowed the rope attached to the limb to be slack; (2.) Failed to attend to the rope; (3.) Failed to control the rope; (4.) Failed to keep the limb away from the Plaintiff; and (5.) Controlled the rope so as to cause the limb to strike the Plaintiff.

We conclude that as a matter of law, Plaintiff's proof failed to show that the defendant allowed the rope to be slack. Also, Plaintiff's proof failed in respect to the claimed omissions of the Defendant in failing to attend the rope or failing to control the rope at all. Whether the rope was properly controlled, however, is another question which is reached by a consideration of the fourth and fifth charges.

■ It is clear that the limb was not kept from the place where the Plaintiff was standing and it is equally clear that the limb may have struck the Plaintiff because of the way the rope was controlled. The evidence shows that on six other occasions, the limb was kept away from the place where the Plaintiff stood and was controlled as to avoid knocking the Plaintiff from his perch. The Defendant's testimony shows that the purpose of the rope was "so it (the limb) wouldn't hit the Plaintiff." We cannot say as a matter of law that there was no evidence to show commission of negligence by the Defendant as alleged in subparagraphs four and five.

■ By the same token, the question of Plaintiff's due care or contributory negligence was properly sub-

432

mitted to the jury. It is true that at the time he was bumped by the limb he was looking at the saw and was not holding on to the tree. According to the Plaintiff's testimony, he had to use both hands in operating the saw. The court did not err in submitting the cause to the jury on the evidence presented.

"Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. . . . Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fairminded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue." Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74.

In this case, the trial court denied the Defendant's post-trial motion including a request for new trial. Obviously then the trial court was not convinced that the verdict and judgment was against the manifest weight of the evidence. "The ruling of a trial court on a motion for a new trial will not be disturbed on appeal unless there was a clear abuse of discretion." Thomas v. Weber, 14 Ill App2d 562, 145 NE2d 128.

It is not the province of this Court to substitute its judgment for that of a jury unless its verdict is against the manifest weight of the evidence. To be against the manifest weight of evidence requires that an opposite conclusion be clearly evident. (Arboit v. Gateway Transp. Co., 15 Ill App2d 500, 146 NE2d 582.)

"The presence of contradictory evidence in the record affords no basis for a reviewing court's disagreement with the conclusion reached by the trier of the facts. A jury verdict cannot be said to be

against the manifest weight of the evidence unless an opposite conclusion is clearly evident." Robinson v. Workman, 15 Ill App2d 25, 145 NE2d 265.

██ We cannot say that the verdict was against the manifest weight of the evidence. The evidence, which shows that the Plaintiff turned his attention from the limb he had sawed, to turn off the engine on a heavy and dangerous implement, such as a chain saw is, is not in and of itself, evidence of contributory negligence. We are not prepared to say that reasonable men would not so act under similar circumstances. This court must consider all the evidence and the circumstances then existing, rather than the facts as we know them. The law does not require that a Plaintiff be a prophet, but only that he exercise the care of an ordinary careful person.

██ Neither can we agree with Defendant's claim that the Plaintiff assumed the risk of injury and so, may not recover. This question too, is ordinarily a question of fact for the jury. Many cases are cited to this Court and other courts have held that the Plaintiff assumed the risk as a matter of law. But each case is different on its facts and the only rule that can be derived from an examination of this authority is that each case must be decided on its own facts.

In the recent case of Olsen v. Pigott, 39 Ill App2d 191, 188 NE2d 361, we had occasion to consider there the contention that the Plaintiff's intestate had assumed the risk of injury. An examination of that opinion and the authority there cited will show that the prime consideration is "were the risks comprehended by the employees or so obvious that they should have been comprehended." Defendant contends that everyone is aware of the danger of falling but this begs the question. The case is not that of a simple and unprecipitated fall, but rather a fall caused by being struck by the butt of a limb. It

would be more accurate to consider this situation as more in the nature of an injury by reason of being struck by another object. It would be as erroneous to classify this as a fall case, as would such a classification in the crash of an airliner. Falling is certainly present in each situation but many other factors are also, and these factors must be examined to see if there was or should have been an awareness of the risk.

Absent a conclusion that the risk that the Plaintiff would be struck by the butt of the limb was so obvious that the risk should have been apprehended, all the facts touching the experience of the Plaintiff must be considered to determine his comprehension of the risks involved in the work in which he was engaged.

In the instant case the Plaintiff was using a rope in trimming trees for the first time in his life. He had had little experience in trimming trees. He had no warning of the danger of being struck by the butt of the limb. As we said in Olsen v. Pigott, whether or not the danger is appreciated is a question for the jury. In the case of Stone v. Guthrie, 14 Ill App2d 137, 144 NE2d 165, the court said "The question of assumed risk is usually and normally one for the jury and involves the subsidiary question of whether the servant understood and appreciated the risks which he is alleged to have assumed." In the instant case, the trial court properly submitted this issue to the jury.

The trial court did not err in entering judgment in favor of the Plaintiff and in refusing to allow the Defendant's post-trial motion. The judgment of the Circuit Court of Winnebago County is affirmed.

Judgment affirmed.

WRIGHT, PJ and CROW J, concur.