Willard Ferguson, Plaintiff-Appellee, v. Richard Lounsberry, Defendant-Appellant.

### Gen. No. 10,585.

Fourth District.

May 5, 1965.

Rehearing denied June 2, 1965.

Gillespie, Burke & Gillespie, of Springfield, and Samuel S. Blane, of Petersburg (Louis F. Gillespie, George B. Gillespie, Stuart Dobbs and Robert E. Gillespie, of counsel), for appellant.

James T. Londrigan, of Springfield, for appellee.

SMITH, P. J.

While operating a power-driven corn elevator on the farm of his defendant employer, plaintiff's clothes became entangled in its mechanism and he sustained injuries. The jury returned a verdict in his favor for $65,000. Defendant's post-trial motion for judgment notwithstanding the verdict or in the alternative for a new trial was denied. From this judgment entered on the verdict and the denial of his post-trial motion, the defendant appeals.

Defendant first asserts that the plaintiff was guilty of contributory negligence which bars his recovery. This requires our scrutiny of the situs, the circumstances and the conduct of the plaintiff at and immediately before the occurrence. It likewise requires a consideration of the respective proper functions of court and jury in the factual picture presented by the

evidence. The occurrence events come almost exclusively from plaintiff's lips, as the only other eye-witness was the 3½-year-old daughter of the defendant.

It is abundantly clear from the evidence that plaintiff was a 29-year-old farm hand and experienced in the operation of mobile farm grain elevators. He was employed by the defendant when the particular equipment was purchased three years before, had operated it many times and had been operating it a week or more before the accident. He had "spotted" or placed the equipment for the unloading process and had repaired the knuckle to which reference will be made later. The day in question was cold and somewhat damp. The plaintiff had on two pair of long underwear, a wool slipover sweater and was generally warmly and heavily clothed. It seems clear from the evidence that it was this sweater which first became entangled in the mechanism.

The corn elevator was generally typical in design and operation, is commonly called a corn dump, and is used to elevate corn from its hopper into an adjacent corncrib. The lower end of the dump rested on the ground. Power was supplied by a tractor stationed at a right angle from the lower end of the dump with the rear end of the tractor nearest the lower end of the dump and some 4–5 feet space intervening between them. Extending from a knuckle on the tractor take off to a gear and bicycle assembly on the lower side of the dump was a square shafting which fitted into a knuckle on the side of the dump and about one foot from it. This shafting was some 14–16 inches from the ground and when in operation revolved at about 275–280 revolutions per minute. Because of the high moisture content of the corn, the tractor was throttled at about twice its normal speed and the revolutions of the revolving shaft were correspondingly increased.

Extending from the lower end of the dump and perpendicular to the tractor is a hopper about 5 feet in length, or the width of a wagon. From the rear end of the wagon, the corn is gradually dumped into this hopper and then elevated to the crib. There is some spillage in this operation and on this day some 5–6 bushels of corn were on the ground. With the equipment in operation, plaintiff was picking up this corn and he states the sequence of events in this language:

> "Well, I was squatted down and I had the elevator in motion running and I was picking it up by hand and was throwing it in and I had cleaned up pretty well all right along the hopper and I was squatted down and I made a left hand turn towards the shaft and reached over to pick up some corn and it got hold of my clothing.

> "After it got hold of my clothes, I remember it jerked me up and started taking me around, flopping me through the air, and I guess I hit my head on the ground or something and I just passed out from shock. That's all I remember until I regained consciousness. I woke up and I could see Mr. Lounsberry's little daughter standing there in a blur, haze, and so I told her to go get her mother. I had just a little piece of clothing here and there. . . ."

And on cross-examination, we find this question and answer:

> "Q. Well, let me ask you if you recall the same day Mr. Lounsberry does, June 25, 1962, when you were in my office and under oath and did I ask you these questions: 'Question, Do you know what position you were in when you became entangled in the machine? Answer, Yes, I was squatted down picking up corn. Question, How

far were you from the moving parts of the machine and drive shaft? Answer, I was sitting right alongside of it. The distance I couldn't say. Question, Facing it or with your back to it? Answer, I would be with my left side to it and I made a left hand turn to pick up corn. Question, So you were facing the elevator yourself, looking at the left side of it and your left arm was by this knuckle and the moving drive shaft? Answer, Until I made my turn, turned facing the shaft. Question, Did you stand up at the same time you turned? Answer, No.' Did you make the answers to those questions on June 25, 1962, under oath? A. I did."

Some five months before the accident, the plaintiff repaired and welded the knuckle on the shaft nearest the corn dump. In so doing, a burr resulted which extended about ½″ beyond the remainder of the knuckle. One of the disputes in this case is whether or not the plaintiff's clothing caught on this burr as the knuckle revolved or caught on the revolving shaft itself. Whatever significance the burr may have on other questions in the case, we do not deem it controlling on the issue of contributory negligence. Likewise there is much controversy and some conflict in the evidence as to whether the plaintiff reached over or under the shaft or knuckle. In our view of this matter, it makes no difference. There is controversy in the evidence as to whether a shield for the shafting and the knuckle was purchased with the equipment. There was none on the day of the accident and this too we do not deem controlling on the issue with which we are now confronted.

██ It is but the assertion of a ritualistic truism, hoary with age and dog-eared from repetition, to say that contributory negligence is ordinarily a question of fact for the jury. Where the underlying facts, factors,

460

conduct and circumstances, together with their reasonable inferences and implications, are beclouded or uncertain from conflicting or divergent testimony, it becomes the time-honored function of the jury to sort the wheat from the chaff and to seek out and find the truth and to express that truth in its verdict. This is hallowed ground properly barred from invasion by either the trial or reviewing courts. It is when the underlying facts, factors, conduct and circumstances, together with their reasonable inferences and implications, present a clear, sharp and vivid picture of conduct that a pungent question of judicial intervention rears its ugly head. Two schools of thought are extant: One is the Holmes view which prompted him to say that "every time that a judge declines to rule whether certain conduct is negligent or not he avows his inability to state the law, . . ." Holmes, Law in Science and Science in Law, 12 Harv L Rev 443, 457 (1899). The antithesis of this view is one which permits the jury to meander within broad general principles of law and by its verdict label certain conduct negligent or nonnegligent. A like set of facts before one jury imposes liability and before another jury denies it. Standards of conduct vary from week to week, from jury to jury and from community to community. Malone, Contrasting Images of Torts, 13 Stan L Rev 779 (1961).

■ While each case comes clothed with its own set of facts, the trial we must follow in this case is pretty well marked. It is rather succinctly delineated in Kelly v. Fletcher-Merna Co-Op. Grain Co., 29 Ill App2d 419, 424, 173 NE2d 855, 858, in these words.

"[1] On appeal from a decision granting or refusing a directed verdict in favor of defendant, the only question for review is the question of law, whether there is any evidence, standing alone and when considered to be true, together with

the inferences which may be legitimately drawn therefrom, which fairly tends to support the cause of action, so that the jury might reasonably have found for plaintiff. Seeds v. Chicago Transit Authority, 409 Ill 566, 101 NE2d 84; Lindroth v. Walgreen Co., et al., 407 Ill 121, 94 NE2d 847. The question is whether there is a total failure of evidence, under these circumstances, to prove the essential elements of plaintiff's case. Wills v. Paul, 24 Ill App2d 417, 164 NE2d 631."

■ To the undisputed facts already recited, we should perhaps state that we are not dealing with a nonfunctioning or malfunctioning piece of equipment. It was in exactly the same condition it had been in for about five months. Neither the lack of a shield nor the burr affected its effective functioning and the plaintiff so testified. Everything about it now known to anybody was known or should have been known to the plaintiff. We think all minds would reasonably agree that a square shaft and a knuckle revolving at a rate in excess of 500 revolutions a minute telegraphed to one with even less expertise than the plaintiff that it was an area of danger. His employer was in the field picking corn—plaintiff had a specific job to do—its manner and method rested in his sole judgment—he was in full charge of the operation. He could have shut off the equipment and picked up without incident. He chose not to do so. He could have picked up without bringing himself in contact with the moving equipment. In fact, he testified that he had many times picked up with the equipment moving. Obviously, it was without previous incident and without personal contact with the equipment. The conclusion is inescapable that he inadvertently, unthinkingly, heedlessly, or carelessly brought his clothing into contact with the equipment. We do not facetiously say that he reached out toward it; it did not reach

out toward him; his was an affirmative and voluntary action. The facts are undisputed. We would abjure our responsibilities if we did not say as a matter of law that the plaintiff was not in the exercise of due care and caution for his own safety.

We briefly mention similar cases where plaintiff's conduct became a question of law and the court so held. Where a plaintiff pulled off his glove, reached for a corn stalk with the corn picker in operation and his hand became entangled in the machinery, plaintiff was not in the exercise of due care and caution. Wills v. Paul, 24 Ill App2d 417, 164 NE2d 631. Where a defective clutch would engage a plow in the ground when the equipment was stopped, but it would jump out of the ground when engaged with the equipment moving and, while using the latter method, plaintiff was busy watching the plow and ran into some low hanging limbs, plaintiff had elected a hazardous rather than a safe method of doing his job and could not recover. McDaniel v. Hulva, 34 Ill App2d 388, 181 NE2d 364. Where a plaintiff was picking up corn at the snout of a corn picker with the picker stationary, but the mechanism in operation and his sleeve was entangled in a moving chain, he was guilty of contributory negligence. Frei v. Frei, 263 Wis 430, 57 NW2d 731. Where plaintiff, while following an accepted practice in loading a truck from a storage bin by closing a door with a pick, slipped on some grain and his foot entangled in a moving augur, he assumed the risk and could not recover. Kelly v. Fletcher-Merna Co-Op. Grain Co., 29 Ill App2d 419, 173 NE2d 855. Also, see cases collected in 67 ALR2d 1232. We find no difficulty in fitting the facts in this case in the groove made by these decisions.

Plaintiff cites Stone v. Guthrie, 14 Ill App2d 137, 144 NE2d 165; Olsen v. Pigott, 39 Ill App2d 191, 188 NE2d 361; Hinrichs v. Gummow, 41 Ill App2d 428,

190 NE2d 610; Brown v. McColl, 36 Ill App2d 215, 183 NE2d 541, and Russell v. Halyama, 27 Ill App2d 359, 170 NE2d 8. A careful reading of these cases merely confirms what we have already asserted and what Hinrichs also states and that is that each case comes clothed in its own peculiar facts. A reading of these cases clearly demonstrates that there are proper cases for jury determination where the facts are disputed, where reasonable inferences from known facts are divergent or where the conduct of the plaintiff is not free from doubt. Merely to read them is to readily distinguish them from the case at bar.

■ Plaintiff also suggests that plaintiff's testimony that he had picked up in this fashion and had seen others do it establishes a custom and that custom is some evidence of due care which precludes either a directed verdict or judgment notwithstanding the verdict. Wills v. Paul repudiates this argument in the following language.

> ". . . It is pointed out that since what plaintiff did was not an uncommon or unusual practice in farm operation, his action in striking the corn stalk was involuntary and the natural and probable act of a reasonable person. There is no merit in such argument. In determining whether the particular acts of a plaintiff constitute negligence, the test is not the frequency with which other men commit such acts but whether the plaintiff at the time of the occurrence, used that degree of care which an ordinarily careful person would have used for his own safety under like circumstances. In substance, the evidence as to the actual occurrence is that although fully aware of the danger involved in proceeding to inspect the corn picker with the power take-off on, nevertheless with the power on and the machine running, plaintiff removed his glove and placed his hand

> where it became enmeshed in the machine's revolving rollers. We think all reasonable men would agree that these undisputed facts fail to establish due care on the part of plaintiff. . . ."

We find it difficult to accept a philosophy which asserts that negligent and careless conduct by frequent repetition in a community converts it into a nonnegligent conduct. We would further observe that the existence of the custom is in sharp dispute in the evidence, an observation which is not controlling as, for our purposes, we assume plaintiff's testimony to be true. The blunt and unpleasant truth is that plaintiff could have picked up for days on end with this equipment in motion without incident had he carefully kept his clothing from it.

In view of the foregoing other questions presented fade into insignificance and need not be discussed. There being a total want of proof of an essential element of plaintiff's cause of action, the trial court erred in not directing a verdict or in failing to enter a judgment notwithstanding the verdict. Its judgment must be and it is accordingly reversed.

Reversed.

TRAPP and CRAVEN, JJ., concur.