**John D. Howell, Plaintiff-Appellant, v. Wilburn Briney and Homer Briney, Defendants-Appellees.**

Gen. No. 11,167.

Fourth District.

July 13, 1970.

Pollock, Ennis and O'Connell, of Quincy, for appellant.

Gillespie, Burke and Gillespie, of Springfield, for appellees.

SMITH, J.

The trial court vacated a judgment in favor of the plaintiff for $37,840 awarded as damages for personal injuries to the plaintiff. Judgment n. o. v. for the defendants was entered, and this appeal followed. The sole issue is the correctness of the trial court's determination that the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff was twenty-two years old and had been employed as a farmhand for six years. On the day in question, he and a fellow employee by the name of Thompson were to use some mechanized equipment to load a truck with corn from a bin. This was accomplished by sticking one end of an auger in a door on the side of the bin and connecting it to a power takeoff on a tractor. The door was about five feet by two and one-half feet in size. The bin was about eighteen feet in diameter and the auger was not quite directly perpendicular. The auger at the outside end was connected with a rotating universal joint on the tractor. The tractor was to the right of the auger and the door of the bin when one faced the bin door. One truck had been loaded and plaintiff removed it and drove another truck in under the auger or elevator. In the meantime, his fellow employee, Elmer Thompson, went around on the other side of the auger and entered the bin for the purpose of scooping the grain down so that the auger could reach it. Plaintiff started the tractor and put the equipment into motion. He then put his left foot over the auger and on one of the rings of the bin, stuck his head in the door and swung his right leg around behind him. His overalls caught in the universal joint which was then moving at 500 revolutions per minute and caused severe injury to his leg, which was and is permanent.

■ In the face of these facts, we now examine the conduct of the plaintiff to determine whether or not there is any evidence that would support the conclusion that he was in the exercise of due care and caution for his own safety. We recognize the old cliche that ordinarily this is a question of fact for the jury. Nevertheless, every witness who testified on either side concerning this event testified that a revolving universal joint was dangerous. The plaintiff's father-in-law so testified. The plaintiff's fellow employee, Thompson, stated that "I was on the other side of the power takeoff when I went into the bin and not on the side that the power takeoff was on. . . . I knew as well as John [plaintiff] that you should stay away from the universal joint when the power takeoff was on. It is something that you always watch for or should watch for." The father-in-law testified "The universal joint that is moving would look like a smooth spinning wheel or a revolving object. It would be obvious to a person if he's looking at it. One who has worked around the power takeoff unit from the auger to the tractor should not get close to the universal joint in operation if it can be avoided. That is one of the first things anyone learns working with equipment." The plaintiff testified "I knew the universal joint when it was in operation and not covered by the shield was dangerous. That was why that bell-shaped shield was on there . . . there wasn't anything wrong with this equipment insofar as the operation that, [sic] the auger or the shaft or the shield or the power takeoff that I observed that day. It was all operating and looked like it was a normal alignment. . . . I have worked around power takeoffs before, including the same auger and power takeoff." Question: "And you knew you shouldn't go through the part which was exposed, the flexible part, did you not, because it was dangerous?" Answer: "I knew that was dangerous, yes."

248

Question: "I mean you saw it moving around, didn't you, the shaft?" Answer: "Yes."

 In this state of the record, we find it difficult to reach any conclusion except that we deal with a piece of equipment which was dangerous and hazardous and that those facts were known to all parties concerned, including the plaintiff. We would note his fellow employee did not use the method employed by the plaintiff in getting into the bin. He went around on the other side while the equipment was stopped to get into the bin. The cold, blunt fact, therefore, remains that when this plaintiff swung his leg over this universal joint he negligently, carelessly and thoughtlessly swung it over the universal joint which was known to him to be dangerous. We have considerable difficulty in distinguishing this case from Wills v. Paul, 24 Ill App2d 417, 164 NE2d 631, where a plaintiff pulled off his gloves, reached for a cornstalk with the corn picker in operation and his hand became entangled in the machinery, and where it was held that the plaintiff was not in the exercise of due care and caution as a matter of law, or from Frei v. Frei, 263 Wis 430, 57 NW2d 731, where the plaintiff while following an accepted practice in loading a truck from a storage bin by closing a door with a pick, slipped on some grain and his foot became entangled in a moving auger, and it was held that he assumed the risk and could not recover. A series of like cases is collected in 67 ALR2d 1232. In Ferguson v. Lounsberry, 58 Ill App2d 456, 207 NE2d 309, the plaintiff reached back and caught his sleeve in the corn dump while it was in operation and was seriously injured. In that case we stated, "We think all minds would reasonably agree that a square shaft and a knuckle revolving at a rate in excess of 500 revolutions a minute telegraphed to one with even less expertise than the plaintiff that it was an area of danger." This record

249

is conclusive of the fact that this revolving universal joint was a source of danger and such danger was known to all parties. Notwithstanding this fact, the plaintiff elected to swing his overall-covered leg over a universal joint and it became entangled. Paraphrasing Ferguson, we do not facetiously say that the universal joint did not reach up and grab the plaintiff, but that his was the affirmative and voluntary action which brought about the contact and his injury. These facts are not disputed. No one directed the plaintiff as to how he should enter the bin. He selected his own method and elected to climb over equipment known to him to be dangerous. The danger was not hidden as it was in Fosen v. Odell Grain & Coal Co., 70 Ill App2d 384, 217 NE2d 126. The method employed by the plaintiff in entering the bin was not the only way to perform his act as it was in Stone v. Guthrie, 14 Ill App2d 137, 144 NE2d 165. As a matter of fact, in the instant case, his fellow employee, Thompson, entered the bin without incident, without difficulty and without exposing himself to danger. Like conduct on the plaintiff's part would have avoided tragedy. He elected otherwise. The consequences arising, however, from his carelessness does not require these defendants to respond in damages where but for that error in carelessness there would have been no damage. There are no disputed questions of fact bearing on the issue which we here discuss.

█ Accordingly, the trial court was correct in entering a judgment n. o. v. in favor of the defendants and that judgment is affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.