Hardware State Bank, as Admr. of the Estate of Jerry Lee Kidwell, Deceased, Plaintiff-Appellee, *v.* Edward Cotner, Jr., Defendant-Appellant.

(No. 11477; ▮▮▮▮▮▮▮▮▮)

Fourth District—August 23, 1972.

*Rehearing denied September 19, 1972.*

CRAVEN, J., dissenting.

Jack E. Horsley, William E. Larrabee, and Richard F. Record, Jr., all of Craig and Craig, of Mattoon, for appellant.

Harlan Heller and Dale A. Cini, both of Ryan and Heller, of Mattoon, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is another farm accident power take-off case where the plaintiff's decedent was killed when he became involved with a power take-off on a tractor. He left surviving a widow, who remarried shortly after a year from his death, and a son who was adopted by the defendant before trial in this case. The complaint was one for wrongful death and a second count for the recovery of funeral expenses. The plaintiff recovered for wrongful death the sum of $55,000 and $958.90 for funeral expenses. The issues presented are: (1) was the plaintiff's first amended complaint sufficient to state a cause of action; (2) did the plaintiff establish a *prima facie* case against the defendant properly submissible to a jury; (3) did errors intervene in evidence which require a new trial; and (4) was the verdict on the wrongful death claim excessive as a result of the remarriage of the widow and the adoption of the child by others. The second question we answer "no" and this disposes of the case.

Defendant was a farmer-employer of the decedent and did some extensive hog feeding. The surface of the hog lot was described as ordinary but frozen on the day of the occurrence. The hogs were fed by automatic feeders. The corn was delivered to the automatic feeders by means of an "auger wagon", a homemade device for mechanically augering the corn from the wagon to the bin. It was this work decedent was doing at the time of his death. The hitch or tongue portion of the wagon would be some 18 to 24 inches above the ground and the power take-off of the tractor would be above it by some six inches. The power shaft was activated by the ignition of the tractor causing the mechanism in the auger wagon to become engaged and it was between the wagon tongue and the power take-off that the decedent was wedged. His right arm was lying immediately under the tongue of the wagon completely severed from his body and he was naked except for his socks, shoes and overshoes. It took those who arrived first at the scene some 40 to 45 minutes to remove him from the place where he was wedged and this involved removing some of the machinery to avoid mutilation of the body. The auger ran from the power take-off into the wagon and there was a spout at the rear of the wagon which would move from side to

side and up and down manually. This spout was held in an upright position by means of a chain. To expel the feeder grain from the wagon, the ignition on the tractor was turned on and this caused the power take-off running from the tractor to the wagon to rotate, thus powering the movement of grain from the wagon to the bin through the spout. This spout could be moved only manually and could not be moved while the operator of the enterprise was on the tractor. The decedent had done this operation alone some 20 to 25 times and he and his employer had performed more frequently together.

The tractor used in this operation was equipped with a "peak houser" which was a canvas wrapped around as a cover over the entire length of the tractor motor and directs the heat from the motor back to the driver and thus heat the inside of the tractor cab. There was a door on the left-hand side of the tractor driver which permitted him to get off the tractor and onto the ground directly in front of the left-rear wheel. There was a lever inside the tractor which regulated the flow of grain through the wagon and out the spout, but one could not operate the head of the spout from the tractor but rather would have to get off the tractor, go back to the feeder and manually manipulate the spout. There was no other way for the operator to leave the cab of the tractor except through this door in front of the left wheel. At the time of the accident, the wagon was located two or three feet from the feeder and the top of the feeder was approximately four feet above the ground. The spout through which the grain traveled was over the feeder and had spilled grain out of this particular feeder. The grain wagon was empty when the coroner and others reached the body of the decedent and the bin over which the spout hung was overflowing with grain.

The ordinary procedure testified to by the defendant for moving the spout from one feeder to another was by stopping the power take-off, getting out of the tractor and going back to the spout, lifting it back and securing it to the rear of the auger wagon, returning to the cab of the tractor and moving the tractor and auger wagon forward to the next feeder, stopping the tractor, getting off the tractor and returning to the back to take the spout off the auger wagon and place it into the next feeder bin, returning to the cab of the tractor and activating the power take-off so that the grain would be delivered into the next feeder bin.

On the day of the accident, the decedent and his wife were 27 years of age and their baby was five months old. Decedent's brother testified that the decedent had had experience as a mechanic on automobiles and did his own repairs to his car. There was testimony by the defendant and others that the decedent was an industrious, fast worker and had careful work habits.

In this case, the plaintiff charged the defendant with acts of negligence as follows: (a) negligently and carelessly failed and omitted to provide the plaintiff's intestate with a safe place in which to work; (b) negligently and carelessly failed and omitted to guard and shield the power take-off and line of shafting powering the auger wagon; (c) negligently and carelessly failed and omitted to warn the plaintiff's intestate of the dangerous condition of the wagon with an unshielded line of shafting; (d) negligently and carelessly required the plaintiff's intestate to use the unshielded auger wagon in a rough and frozen feed lot, which said rough and frozen ground was covered with snow so as to render the ground slippery. The complaint likewise stated that the plaintiff was in the exercise of due care and caution for his own safety, that he fell upon the line of shafting powering the auger wagon and that such fall was a direct and proximate result of one or more or a combination of all or several of the negligent acts or omissions of the defendant as above alleged. We have been favored with briefs and arguments on both sides, carefully prepared, briefed and argued on the issues herein above stated. In our judgment, the first hurdle for the plaintiff is whether or not the evidence shows or there are circumstances from which it may be reasonably inferred that the plaintiff was in the exercise of due care and caution for his own safety. Even more narrowly defined is this issue one for this court as a matter of law or is it one more properly submitted to a jury?

There were no eyewitnesses to the occurrence events between the time that the plaintiff entered the cab of the tractor to start his bin filling operation until he was found wrapped around the power take-off with the motor of the tractor stopped. It is almost a ritualistic redundancy to assert that the power take-off farm accident cases each come clothed in its own peculiar circumstances. (*Hinrichs v. Gummow*, 41 Ill.App.2d 428, 190 N.E.2d 610; *Ferguson v. Lounsberry*, 58 Ill.App.2d 456, 207 N.E.2d 309; *Clubb v. Main*, 65 Ill.App.2d 461, 213 N.E.2d 63.) The defendant likes our *Ferguson* and our *Howell v. Briney*, 125 Ill.App.2d 246, 260 N.E.2d 858. Plaintiff on the other hand likes *Olsen v. Pigott*, 39 Ill.App. 2d 191, 188 N.E.2d 361 and *Clubb*. None of these cases are precisely in point on all points. In *Ferguson* and *Briney*, we dealt with properly functioning machinery where the affirmative act of the plaintiff in the presence of an obviously known danger was the cause of his injury. With a safe way to perform the work available to him, he elected to do it in an unsafe manner and thus brought about his own injury. In *Clubb* and *Olsen*, the evidence was undisputed that their deaths were caused by the particular machinery. The evidence was undisputed that each piece of machinery was defective in one or more ways. In addition, in *Olsen*, evi-

dence was presented that previous epileptic seizures had been experienced by the plaintiff and this was assigned as a possibility for his fall from the equipment. Evidence negating this was presented. Likewise in *Clubb* it was argued that the plaintiff's fall from the tractor was occasioned by physical illness or that a wasp or bee may have attacked him. These cases merely demonstrate that there are proper cases for jury determination where the facts are disputed, where reasonable inferences from known facts are divergent or where the conduct of the plaintiff is not free from doubt.

We return to the question of whether or not plaintiff's contributory negligence was one for the court or one for the jury under the circumstances shown in this evidence.

■■ There is no defect or malfunctioning of this equipment shown in the record. It was built that way; it had been used that way; and the plaintiff on some 25 occasions had himself used it in that circumstance. That condition and that mode of operation was patently known to him. We would characterize the decedent as a veritable dolt to assume that he was not aware of the danger of this uncovered shafting. He was experienced with machinery and made repairs on his own car. He wasn't a dolt. It is clear from the evidence in this record that he could have performed this operation by the simple expediency of turning off the tractor without incident or danger from the uncovered shafting. The record is silent as to why he did not follow what the evidence shows was the customary procedure. If he fell into the machinery because of frozen, rough, and slippery ground it was an accident, rather than a responsibility of the defendant. We think we can take judicial notice of the fact that a country farm lot in the winter time has many hazards which are not present on the dance floor or the Astro turf. Surely it cannot be said that an employee who has been asked to feed the hogs in such a lot is required by his employer to work in an unsafe place. Either the defendant did just that or fed them himself or waited until spring. Neither of the two alternatives is necessarily acceptable. It may be reasonably concluded that the defendant did not deliberately become entangled in the shafting or power take-off. It is contrary to human nature. It seems abundantly clear that this operation had been performed many, many times with the power take-off and the shafting in the same condition without incident. It operated as it had always operated. For some reason undisclosed in this evidence, the plaintiff came in contact with it. We find it difficult to believe that the condition of this hog lot under such circumstances imposes a liability upon the defendant. There are hazards in living in this life where one's own due care and caution for his own

safety is his only safeguard. The necessities of modern living make this true.

■■ We therefore conclude that the plaintiff has failed to establish his freedom from contributory negligence as a matter of law and accordingly the judgment of the trial court must be reversed for failure to establish one of the prerequisites for liability on the part of the defendant.

In reaching this conclusion, it becomes unnecessary to discuss the other points raised and so ably discussed in the respective briefs.

Judgment reversed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN dissenting:

The majority opinion concludes that the plaintiff has failed to establish freedom from contributory negligence as a matter of law. This conclusion is based upon inferences drawn by the majority from the evidence in this record. As I view it, the record would support other inferences and for that reason the question of the plaintiff's decedent's conduct was one properly left to and decided by the jury.

Upon the evidence this case is distinguishable from *Ferguson v. Lounsberry*, 58 Ill.App.2d 456, 207 N.E.2d 309, and from *Howell v. Briney*, 125 Ill.App.2d 246, 260 N.E.2d 858. In *Ferguson* and *Briney* the plaintiff testified as to his actions immediately preceding the injury. From that testimony and from his conduct measured by that testimony, it could be, and was, concluded that the plaintiff acted negligently, thereby causing entanglement in the dangerous farm machinery there involved.

In this case, as in the cited *Olsen* and *Clubb* cases, the conduct of the plaintiff is not free from doubt. The issue of the plaintiff's contributory negligence was for the jury.

Finally, the substantive effect of the majority opinion is to leave a farm worker totally without a remedy for any injury by reason of dangerous or defective farm machinery if that danger or defect is known to the user. Matters of cause and effect are rendered irrelevant.

Mere use of farm machinery known to be dangerous or defective—even if that use is as directed by the employer—is contributory negligence as I understand the majority opinion in this case. I am unable to accept that result and accordingly, I dissent.