THOMAS REID, Plaintiff-Appellee, *v.* EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY, Defendant-Appellant.

(No. 56014;

First District (5th Division)—August 3, 1973.

Harry I. Parsons and Sidney A. Wilson, of Chicago, (Dom J. Rizzi, of counsel,) for appellant.

Michael T. Guinan and Griffin, Guinan & Griffin, both of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

In this action plaintiff sought to recover damages for injury sustained by him in the operation of a printing press, which injury was alleged to have occurred because of defendant's negligent safety inspections of the press which was owned and operated by its assured. Plaintiff's injury occurred when his hand was caught between two brass rollers of a printing press he was cleaning. The jury rendered a verdict for plaintiff in the amount of $100,000 and defendant filed a post-trial motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The motion was denied and from that denial defendant appeals.*

---

* In a workmen's compensation claim arising from the same accident, defendant, as the compensation carrier of plaintiff's employer, had paid plaintiff a lump sum settlement of $12,811.64 plus medical and hospital bills of $5,806.96. The jury in the present case was not apprised of these payments.

Defendant presents five points on this appeal:

1. At the time of the occurrence, plaintiff was not in the exercise of due care for his own safety as a matter of law;

2. Defendant neither did anything nor failed to do anything that was the proximate cause of plaintiff's injury;

3. The Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1963, ch. 48, par. 138.5(a)) precludes a further common law recovery from defendant;

4. Defendant is entitled to a judgment notwithstanding the verdict; or

5. Defendant is entitled to a new trial because the verdict is against the manifest weight of the evidence.

On January 7, 1964, plaintiff, 35 years old, was an employee of the Casper Tin Plate Company of Chicago. For 18 years he had been a press and wash up man for the company, and on the day of the accident had been given instructions by the press foreman to clean a 25 by 15 foot press which had cylindrical brass rollers five feet long and four and one-half inches in diameter in the front of the machine. He testified that the only way he could clean the press in the manner described by the foreman was while it was running. After he had cleaned the front part of the press, he poured a solution over the rollers to cut the ink, took a piece of steel wool in his right hand, and, while leaning the full length of his body to reach the rollers with his hand, he was going lightly over the rollers when his shirt sleeve caught and pulled his hand between the rollers.

The press is 25 feet by 15 feet. There was a run button in the back of the press which he had pushed to start the press for cleaning. There were no safety guards on the front of the machine where plaintiff worked. After his hand was caught between the rollers, he tried to reach for the safety buttons but they were out of reach, about 10 feet away. He was in terrific pain and cried out for help, but no one was within hearing distance of him. Ten to 15 minutes later, someone heard him, ran to his aid, and turned off the press. The rollers were taken off the press, freeing his hand, and he was taken by ambulance to the hospital.

Prior to the accident, someone from defendant company inspected the plant and presses, telling plaintiff he was going to make the machines safe. The man returned about a month later, and when asked if the machines were now safe, the man replied, "Don't worry about it. You just be careful." His hand was operated on eight times and is permanently crippled. Since the accident, "safety buttons" have been placed on the press close to the rollers. Had they been installed at the time of the occurrence, they would not have prevented the catching of plaintiff's hand in the rollers, but the press could probably have been stopped

sooner than it was. Thus, the presence or absence of nearby stop buttons relates only to the issue of damages and not to the issues of negligence or contributory negligence.

Plaintiff testified that when he cleaned the larger rollers at the rear of the machine, he would stop the press, clean a portion of the roller, then press a jogging button which would turn the roller a fraction of a turn, then clean another section. Repeating the procedure four times would be sufficient to clean the entire roller. The front rollers which were involved in the accident could have been stopped and started with the same button. When asked why he didn't stop the press and use the jogging button to clean the front rollers, he said there was no particular reason. He also said he could have removed the rollers for cleaning. While he was trained in his job by the former jobholder, he controlled the entire cleaning process himself. On the day of the injury, he was told by the foreman to use steel wool on the rollers. He was wearing a long sleeve shirt buttoned at the wrist.

Plaintiff's expert witness, a safety engineer, testified, on cross-examination, that he did not believe cleaning the rollers with steel wool while the machine was in operation was the accepted way of cleaning, according to proper safety standards. Also, in his opinion, the machine should have had a pressure limiting device which would automatically shut off the press when anything oversized was pulled into the equipment. The press could have been shut down, the rollers removed by two men, and then cleaned and replaced. That would have been a safe way to clean the machine but would have taken more time. He had never seen this particular machine but was familiar with the type.

A superintendent at Casper Tin plate Company testified that steel wool was not necessarily used to clean the rollers but is used in another part of the cleaning process. The rollers could be cleaned with the machine stopped. He could not say for sure whether the stop buttons within reach of the front of the press were installed after the accident.

A safety and health consultant for defendant insurance company made half a dozen visits to Casper Tin Plate Company during 1964 in fulfilling his function as a consultant to aid in overall accident control. He did not remember if he made any visits to the plant in early January 1964.

*OPINION*

■■■ Usually, the question of whether plaintiff was in the exercise of due care for his own safety or was guilty of contributory negligence, is for the jury to determine, based on the facts, but when those facts "rest solely upon his own testimony, and the attendant circumstances that are not in dispute, the Court then has the duty of determining, as a matter of law, whether he [plaintiff], in fact, used ordinary caution for

his own safety." (*Day v. Barber-Colman Co.*, 10 Ill.App.2d 494, 511, 135 N.E.2d 231, 239.) In the present case, plaintiff was alone at the time of the accident and by his own testimony was in complete control of the cleaning process. He was told which machines to clean but was to determine himself what methods to use. The facts and circumstances concerning the accident itself, until a time 10 to 15 minutes later, were derived from his testimony only, since no one was present other than plaintiff to tell about what happened. We may therefore determine, as a matter of law, whether plaintiff used ordinary care for his own safety, and we conclude that the manifest weight of the evidence establishes overwhelmingly that he did not. *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513.

At the time of the occurrence, plaintiff was standing on the catwalk in front of the press. While the press was running, he took a piece of steel wool in his right hand and stretched to reach the rollers. In so doing, he leaned the entire length of his body and stretched to get his right hand in a position where he began rubbing the moving rollers with the steel wool in his right hand. As he was doing this, his shirt sleeve caught and pulled his hand between the rollers. The safety buttons to stop the press were out of reach and the machine did not shut off automatically. Ten to 15 minutes later, someone heard his cries for help, turned off the press, and freed his hand.

Plaintiff's expert witness testified that he was told by plaintiff about the way he had been using steel wool to clean the rollers while they were in operation. The expert then stated: "As long as I have been in the profession that has not been an accepted, approved way or method of doing that." He said that the jogging button could be used to start or stop the machine during the cleaning process but its use "would be dependent on the cleanliness you want on this roll." He also stated that the machine could not be cleaned when it was stopped because the rollers could not be turned manually. However, he had never visited the plant nor seen this particular machine and his testimony conflicts with that of the plant supervisor who testified that the press could be cleaned with the rollers stopped.

From these facts, it seems clear that plaintiff had a safer method available when cleaning the press, one which for "no particular reason" he chose not to use. By use of the jogging button, he could easily have eliminated the danger inherent in his own accustomed cleaning process, by turning the front rollers a quarter revolution, cleaning them, returning to the rear of the machine to press the button for another quarter turn, and repeating the process as needed. Using the jogging button would doubtless have lengthened somewhat the time required for

cleaning, but would still have taken far less time than the other alternative safe method which required removal of the rollers. Thus, plaintiff ignored a safe method of operation in favor of the more hazardous one which led to his injury.

Plaintiff's brief states categorically that plaintiff testified he could not clean the machine unless it was running. However, plaintiff's testimony, including the testimony to which the brief refers, suggests that the opposite is true. The part referred to in plaintiff's brief related that the foreman had left plaintiff a note telling him to clean up the presses. Continuing, plaintiff testified:

> "When you ask me if the card or note told me how to clean the press, my answer is this number one press, he said I would have to use steel wool on the ink fountain and around the front of the press on some of the rollers while—that was the only way you could clean that press while it was, you know, in operation."

We interpret the above to mean that the steel wool method of cleaning may have been the only way to clean the press while it was operating, but, as we noted before, plaintiff's expert witness testified that it was not an acceptable method, and, as we pointed out above, the jogging button could safely have been used to start and stop the machine at short intervals for purposes of cleaning the rollers.

■■ Contributory negligence is defined as a lack of due care for one's own safety as measured by an objective reasonable man standard. (*Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E.2d 305.) When plaintiff had safer choices available to him, and when he elected a more dangerous way of doing his job, he became contributorily negligent as a matter of law. This is true even though an employee might be acting under general directions from his employer and though he would lose his job if the work was not performed in the recommended fashion (*Fore v. Vermeer Manufacturing Co.*, 7 Ill.App.3d 346, 287 N.E.2d 526), and even though plaintiff had been cleaning the presses without incident for 17 years. This latter fact merely accentuates plaintiff's knowledge of the operation of the press and its inherent dangers. The test of negligence is not the frequency with which the act has been safely completed by a plaintiff (or others), but whether plaintiff, at the time of the occurrence, used that degree of care which an ordinarily careful person would have used for his own safety under like circumstances. (*Francis v. Francis*, 9 Ill.App.3d 90, 291 N.E.2d 857; *Wills v. Paul*, 24 Ill.App.2d 417, 164 N.E.2d 631.) We believe he did not.

In *Ferguson v. Lounsberry*, 58 Ill.App.2d 456, 462, 207 N.E.2d 309, a judgment for $65,000 was reversed by the reviewing court and judgment notwithstanding the jury's verdict was entered in favor of the de-

fendant on the ground of plaintiff's contributory negligence as a matter of law. A quotation from the opinion in that case is apropos here:

"To the undisputed facts already recited, we should perhaps state that we are not dealing with a non-functioning or malfunctioning piece of equipment. It was in exactly the same condition it had been in for about five months. Neither the lack of a shield nor the burr affected its effective functioning and the plaintiff so testified. *Everything about it now known to anybody was known or should have been known to the plaintiff.* We think all minds would reasonably agree that a square shaft and a knuckle revolving at a rate in excess of 500 revolutions a minute telegraphed to one with even less expertise than the plaintiff that it was an area of danger. * * * *The conclusion is inescapable that he inadvertently, unthinkingly, heedlessly, or carelessly brought his clothing into contact with the equipment.* We do not facetiously say that he reached out toward it; it did not reach out toward him; his was an affirmative and voluntary action. The facts are undisputed. We would abjure our responsibilities if we did not say *as a matter of law* that the plaintiff was not in the exercise of due care and caution for his own safety." (Emphasis added.)

See *Howell v. Briney,* 125 Ill.App.2d 246, 260 N.E.2d 858.

In view of our conclusion as to plaintiff's contributory negligence, we consider it unnecessary to deal with defendant's other contentions.

■■ We believe that the evidence of contributory negligence in its aspects most favorable to plaintiff so overwhelmingly favored defendant on this point that no judgment for plaintiff should be permitted to stand. The judgment is reversed and the cause remanded with directions to enter judgment in favor of defendant notwithstanding the verdict of the jury.

Reversed and remanded with directions.

DRUCKER, P. J., and LORENZ, J., concur.